UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIE TOTTEY,

                                  **Plaintiff,**

                          v.                                5:05-CV-877
                                                          (FJS/DEP)

**LIFE INSURANCE COMPANY OF NORTH
AMERICA a/k/a CIGNA GROUP INSURANCE,**

                                  **Defendant.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**OFFICE OF PETER N. LITTMAN**        **PETER N. LITTMAN, ESQ.**
308 North Tioga Street
Ithaca, New York 14850
Attorneys for Plaintiff

**RUSSO, KEANE & TONER, LLP**         **KEVIN G. HORBATIUK, ESQ.**
33 Whitehall Street, 16th Floor
New York, New York 10004
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      The Court conducted a bench trial to resolve this matter on September 17-18, 2007. At the commencement of the trial, the parties agreed that the only facts in dispute were (1) whether Plaintiff was entitled to long-term disability benefits under the Policy and (2) whether, as of May 4, 2005, Plaintiff was unable to perform all the material duties of any occupation for which she was reasonably qualified based on her education, training, and experience. Likewise, they agreed that the only issue of law for the Court to resolve was whether, as of May 4, 2005, Plaintiff was

totally disabled within the meaning of the Plan requirements. Finally, the parties agreed that the standard of review in this case is *de novo*.

## II. BACKGROUND

Plaintiff filed her complaint against Defendant on July 14, 2005. *See* Dkt. No. 1. Defendant is the long-term disability insurance benefits carrier for qualified Cornell University employees, and Plaintiff is a covered employee under this contract.

Plaintiff left her employment at Cornell University in October 2003 because of ongoing and chronic epilepsy complex seizures, a chronic seizure disorder, and numerous psychiatric disabilities resulting from her seizure disorder. Plaintiff received long-term disability benefits from Defendant for her disability from October 2003 through May 4, 2005.

On or about May 4, 2005, Defendant informed Plaintiff that Defendant no longer considered her disabled from her occupation under the definition of disability contained in the long-term disability policy, that Defendant was closing her insurance claim, and that Defendant would pay her no further benefits.

Plaintiff filed an internal appeal of the denial of her claim, which resulted in Defendant affirming its denial in a letter dated June 14, 2005. Plaintiff then filed this action seeking an order requiring Defendant to pay her all long-term disability benefits to which she was entitled under the Plan, together with interest from May 5, 2005, reinstating her medical insurance coverage, and awarding her attorney's fees.

After Defendant withdrew its motion for partial summary judgment, based on the parties' stipulation, the Court scheduled the trial of this matter. At trial, Plaintiff called the following

witnesses: (1) Judy Jensvold, (2) Cheryl Littel, (3) Patricia Riddle, (4) Robert Tottey, (5) Julie Tottey, and (6) Dr. William Wittlin. She also provided the Court with the transcript, as well as the DVD, of the deposition of her neurologist, Dr. Anthony Ritaccio. Defendant called no witnesses to testify. Finally, the parties submitted Defendant's Long-Term Disability Administrative Record for the Court's review.

The following constitute the Court's findings of facts and conclusions of law as Rule 52(a) of the Federal Rules of Civil Procedure requires.

### III. DISCUSSION

**A.  Findings of fact**

Having reviewed the witness' trial testimony, the deposition transcript of Dr. Ritaccio, and Defendant's Administrative Record, the Court makes the following findings of fact:

1. The testimony of Ms. Jensvold, Plaintiff's direct supervisor at Cornell University, and Ms. Littel, one of Plaintiff's co-workers, is irrelevant because neither of them had any knowledge of Plaintiff's condition in May 2005.

2. Ms. Riddle, Cornell University's Medical Leaves Administrator, had no involvement with Plaintiff's case between June 2004 when Plaintiff reversed its initial denial and May 2005. *See* Testimony of Patricia Riddle, Trial Transcript dated September 17, 2007 ("Riddle Tr. I") at 48-49.

3. In May 2005, Defendant contacted Ms. Riddle and told her that Defendant would be sending Plaintiff a letter closing her long term disability because Plaintiff had had surgery and her condition was improved. *See id.* at 49.

4. Ms. Riddle called Ms. Tottey and told her about Defendant's decision. *See id.*

5. Although Plaintiff appealed Defendant's May 2005 decision, Ms. Riddle did not assist her. *See id.* at 50.

6. Between Defendant's first adverse benefit determination in May 2005 and the final adverse benefit determination in June 2005, Ms. Riddle had no involvement with what was going on. *See id.* at 52.

7. After Plaintiff first received long-term disability benefits in June 2004, her condition worsened and she had more frequent seizures. *See* Plaintiff's Testimony, Trial Transcript dated September 17, 2007 ("Plaintiff Tr. I") at 70.

8. Plaintiff continued to have seizures from time to time until May 2005, and she was never seizure free for more than one or two months. *See id.* at 72.

9. Neither Dr. Ritaccio nor Dr. Wittlin ever released Plaintiff to return to work. *See id.* at 72-73.

10. Plaintiff has the skills necessary to do legal, medical and ethnic translations in French. *See id.* at 76.

11. At times in her career, Plaintiff taught high school French and worked as a free-lance translator. *See id.* at 76-77.

12. Plaintiff continued to have seizures between January 2005 and May 2005, *see* Testimony of Robert Tottey, Trial Transcript dated September 17, 2007 ("R. Tottey Tr. I") at 88, she had these seizures on a weekly basis, *see id.* at 89, and there were times she could not communicate with people, either by telephone, e-mail, or letter, *see id.* at 90.

13. The Court credits the opinion of Dr. Wittlin, Plaintiff's treating psychiatrist, that

Plaintiff could not have returned to any job for which she had background, training or experience during the period from November 18, 2003, to June 14, 2005. *See* Testimony of Dr. Wittlin, Trial Transcript dated September 18, 2007 ("Wittlin Tr. II"), at 30.

    14. The Court credits Dr. Wittlin's conclusion that bipolar illness and epilepsy, from which Plaintiff suffers, are chronic states and unpredictable disorders; and a person who suffers from such disorders may be able to work only one day each week or one week out of three and cannot have a job functioning like that. *See id.* at 60.

    15. Dr. Ritaccio has treated Plaintiff since 1990. *See* Transcript of the Deposition of Anthony Ritaccio dated April 4, 2007 ("Dep. Tr."), at 9.

    16. The Court credits Dr. Ritaccio's conclusion that Plaintiff suffered a "status epilepticus" in late April 2003, which is the maximum and most malignant expression of epilepsy. *See id.* 14.

    17. Plaintiff's seizures come from her left temporal lobe, the area of the brain which is dominant for memory among other important functions, including well-established language functions and is vital for maintenance of normal mood. *See id.* at 15-16.

    18. The Court credits Dr. Ritaccio's statement that in May 2005 Plaintiff was still unable to undergo regular employment because she was still having seizures, she was on a three-drug regimen, in which each drug was a mild or moderate intoxicant, and she continued to undergo very complex, manipulations of the electrical current of her stimulator. *See id.* at 80.

    19. The Court credits Dr. Ritaccio's conclusion that, as of May 17, 2005, Plaintiff had seizures from her left temporal lobe; was drug resistant; had psychiatric complications from seizures; had a vagus nerve stimulator implanted; and was totally disabled. *See* Administrative

Letter at 0205 (Dr. Ritaccio's Letter dated May 17, 2005).

20. The Court credits Dr. Ritaccio's opinion that, in May 2005, Plaintiff had never had well-controlled epilepsy and that she would have to have a very large portion of her brain removed to get any reasonable relief. *See* Dep. Tr. at 32.

21. Furthermore, the Court credits Dr. Ritaccio's opinion that, in May 2005, Ms. Tottey had multiple problems that rendered her unable to have any meaningful employment: medically refractor, poorly-controlled, frequent seizures including convulsions or grand mal seizures; the nature of her medically refractory epilepsy took away her driving privileges; risk for physical injury; risk for emotional destabilization and the need for psychiatric care, risk for status epilepticus and that the sum of her conditions rendered her unemployable on both medical and social grounds. *See id.* at 34-35.

22. The Court finds credible, as consistent with the other medical information in the record, Dr. Ritaccio's statement that he did not tell CIGNA's reviewing physician, Dr. Neuren, during their telephone conversation in May 2005, that Plaintiff could work. *See id.* at 28-29. Although he agreed with Dr. Neuren that the majority of adults with epilepsy are functioning in the workplace, Plaintiff was not among them. *See id.* at 31.

23. The Court finds credible Dr. Ritaccio's statement that he did not tell Dr. Neuren that Plaintiff did not have any apparent cognitive impairment because, in fact, she was clearly impaired and certainly impaired from her baseline. *See id.* at 32-33.

24. The Court credits Dr. Ritaccio's statement that, even after Plaintiff had surgery in September 2006, which removed four centimeters of brain tissue, about one quarter of the brain tissue of the left hemisphere of her brain, Plaintiff was not able to engage in gainful employment.

*See id.* at 37-41.

25. The Court concludes that the testimony and medical records of Dr. Wittlin and in particular Dr. Ritaccio about Plaintiff's condition as of May 4, 2005, and her inability to work at that time, are far more convincing and present a clearer and more credible picture of Plaintiff's condition and her abilities than the contradictory conclusions of Defendant's non-treating, reviewing physicians.

**B.    Conclusions of law**

As noted, the Court's review of the Administrative Record and any additional evidence that it deems relevant is *de novo*.

The Policy, under which Plaintiff was covered, defines the term "Disability" as follows:

> An **Employee** will be considered **Disabled** if, because of **Injury** or **Sickness**,
>
> 1.   the **Employee** is unable to perform all the material duties of his or her regular occupation, or solely due to **Injury** or **Sickness**, he or she is unable to earn more than 80% of his or her **Indexed Covered Earnings**; and
>
> 2.   After **Disability** Benefits have been payable for 12 months, the **Employee** is *unable to perform all the material duties of any occupation for which they may reasonable become qualified based on education, training or experience.*

*See* Administrative Record at 0474 (italics added).

Plaintiff has the burden to prove, by a preponderance of the evidence, that she is totally disabled within the meaning of the Plan. *See Paese v. Hartford Life & Accident Ins. Co.*, No. 02 Civ. 9778, 2004 WL 764760, *9 (S.D.N.Y. Apr. 9, 2004), *aff'd in part and vacated and*

*remanded in part*, 449 F.3d 435 (2d Cir. 2006) (citations omitted).

After reviewing Defendant's Administrative Record as well as the relevant testimony at the trial, including the transcript of the deposition of Dr. Anthony Ritaccio, the Court concludes that Plaintiff has proven that she was "totally disabled" within the meaning of the Plan on May 4, 2005, when Defendant terminated her benefits and remained so on June 14, 2005, when Defendant denied her appeal from the May 4, 2005 decision. Therefore, the Court holds that Defendant erred in terminating Plaintiff's benefits at that time. Accordingly, the Court concludes that Plaintiff is entitled to receive long-term disability benefits from May 4, 2005, through the present time, as well as pre-judgment interest on those benefits.[1]

**C.     Attorney's fees and costs**

Section 502(g) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In exercising its discretion, a district court must consider the factors that the Second Circuit set out in *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869 (2d Cir. 1987). These factors are as follows:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

---

[1] The Court notes that its decision has no bearing on any future determination of whether, and for what period of time in the future, Plaintiff will remain totally disabled within the meaning of the Plan.

*Id.* at 871.

Considering these factors, the Court concludes that Plaintiff is entitled to an award of attorney's fees and costs. First, the Court notes that the fifth *Chambless* factor is not applicable to this case because this is clearly an individual action. *But see Paese*, 2004 WL 764760, at *10 (finding that, "although this is an individual action that will not confer a common benefit on a group of pension plan participants, a benefit is conferred in a general sense, on group employee benefit plan participants in that insurers will be deterred from terminating benefits without reason"). Furthermore, although the Court does not reach the issue of whether Defendant acted in bad faith, the Court concludes that Defendant failed to take seriously, and in fact in some instances mischaracterized and took out of context, the comments, reports and notes of both Plaintiff's treating neurologist, Dr. Ritaccio, and her treating psychiatrist, Dr. Wittlin, who had been treating her for several years and who were in the best position to determine whether she was able to perform the functions of any occupation for which she was qualified. Moreover, by terminating Plaintiff's benefits and forcing her to sue, Defendant has managed to avoid paying Plaintiff since May 5, 2005. In addition, Defendant has the financial ability to satisfy an award of attorney's fees, and an award of attorney's fees will deter other insurers from terminating benefits unjustifiably. Finally, the merits of Plaintiff's position outweigh the merits of Defendant's position.

## IV. CONCLUSION

Based upon the above-stated findings of facts and conclusions of law, the Court hereby **ORDERS** that, because Plaintiff was totally disabled within the meaning of the Plan as of

May 4, 2005, Defendant shall pay Plaintiff the long-term disability benefits to which she is entitled under the Policy from May 4, 2005, to the present time, as well as pre-judgment interest on those benefits; and the Court further

**ORDERS** that Plaintiff's request for reasonable attorney's fees and costs is **GRANTED**; and the Court further

**ORDERS** that Plaintiff shall file her application for attorney's fees and costs together with the supporting documentation, including the contemporaneous time records of her counsel, on or before **March 6, 2009**; and the Court further

**ORDERS** that Defendant shall file any objections it has to Plaintiff's application on or before **March 20, 2009**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.[2]

**IT IS SO ORDERED.**

Dated: February 18, 2009
       Syracuse, New York

*/s/ Frederick J. Scullin*
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] When the Court issues a decision regarding Plaintiff's application for attorney's fees and costs, the Court will amend the judgment accordingly.